May it please the court. My name is Jonathan Bleas. I represent Petitioner California Energy Commission and I'd like to reserve 10 minutes of my time for rebuttal. We're here today because California has a water crisis and respondent U.S. DOE's failure to allow the state's water efficiency standards for clothes washers to go into effect has robbed the state of an important tool in meeting that crisis. The tool that could save almost as much water as is consumed by the residents of San Diego every year. We're here in this court because this court has jurisdiction. We argued in our briefs that it's reasonable to view a section 6297 waiver proceeding, which DOE conducted here, as being tantamount to a DOE rulemaking proceeding under section 6295, which APCA, the Energy Policy and Conservation Act, does give jurisdiction expressly to the courts of appeals. But we've also acknowledged it is reasonable to view the judicial review provisions as ambiguous. Those provisions assign certain types of activities for review in the district courts. What's ambiguous about the statute that says you can come to a court of appeals, an average party can bring a case to court of appeals when they have a claim arising from a rule under three given statutes. I mean, that's where is the ambiguity? The ambiguity, Your Honor, is that the same judicial review provisions also assign three specific types of proceedings to the district courts. They say that if the Federal Trade Commission or Respondent DOE has failed to carry out a non-discretionary duty, or if DOE has failed to begin a rulemaking, or if a manufacturer has violated one of the substantive provisions of the statute, those three cases go to the district courts. What we have here is a 6297 waiver proceeding. We argued that we're relying on two related theories. One, that 6297 is really tantamount to a 6295 proceeding where DOE adopts or amends an efficiency standard. DOE is ruling on a state waiver petition under section 6297, either granting the waiver so a state standard can go into effect. It's, in effect, an amendment of the Federal standard as it applies in that state. Or if DOE denies the waiver petition, it is maintaining the effect of the Federal standard in the state. So we're arguing that 6297 waiver proceedings are really the same as the 6295 efficiency standard proceedings, and we're also arguing that it's ambiguous because we have some assigned to the district courts and some assigned to the courts of appeals. What the DOE had granted the waiver, and an interested party who's adversely affected by the grant desired to challenge that, which court would he challenge the grant in? In the appropriate court of appeals. It would be a court of appeals, not this Court. Yes. And do you base that on? Well, I base it on what I previously said, that a 6297 waiver proceeding is tantamount to or functionally similar to a 6295, and I also base it on the fact that the statute is ambiguous because it assigns this basket to the district courts and this basket to the court of appeals, but it doesn't say anything expressly about 6297. So if it's silent as to 6297, is there anything that we would look at to see whether Congress intended that there be any judicial review at all? Well, yes. The general rule is that unless Congress has been very clear that agency, an agency action is completely within the discretion of the agency and is removed from judicial review, there is a presumption that judicial review is available. The district court's Federal question jurisdiction provides a backstop in that kind of instance. The default is just a review in district court under the APA. I mean, that's what happens. If the government does something, finally, you can go to under, you can have it reviewed under the APA unless, as you say, there's a very specific declaration by Congress that it's agency discretion. Well, I would disagree that there has to be a very clear expression of congressional language that a case go to the court of, to one of the courts of appeals. And as far as the lower, I understand your argument on that. Thank you. I wanted to point out, your statement, Your Honor, that we could, that the backstop of the Federal question jurisdiction is available in the district court, actually emphasizes one of the reasons why this court should take jurisdiction. You noted that the district court's review would be under the APA. That is, the district, if you send us back to the district court, then the district court is going to review, using the arbitrary and capricious standard, is going to review DOE's record. The losing side is going to appeal. We will be back in this court, and this court will apply the arbitrary and capricious standard to DOE's record on a de novo basis. The, that would be a, the exact same review will happen in both courts. That would be a waste of the court's and the litigant's time and resources. And it would produce a substantial amount of delay, which we think Congress did not want. Congress established a pretty quick deadline for DOE to act on these waiver petitions. And we think that establishing a, a two-tiered judicial review procedure is, is inconsistent with that. Just like it's inconsistent to say that Congress would have wanted review in the district courts, because what Congress did expressly give to the district courts are matters in which there is never, or virtually never, a record below. The district courts have, have no express jurisdiction over rulemaking proceedings under APTA. And the types of decisions that they're reviewing do not directly affect what manufacturers do or, must do or do not have to do. In contrast, what Congress gave the courts of appeals as far back as 1978, in an earlier version of, of APTA, was the rulemakings under 6393, 6293, 9495. Those are all, those are the rulemakings to establish test methods that manufacturers must use, the rulemakings to establish what information they have to put on the yellow labels that we see on appliances when we go to the store, and DOE's rulemakings to set efficiency standards that tell the manufacturers how they have to build their appliances to meet, to be, to be energy efficient. All of those have a fully developed record in a rulemaking proceeding in an agency below. That is exactly what we have here. We have a fully developed record in a rulemaking proceeding below, and that rulemaking proceeding is going to directly tell the manufacturers what they can or cannot sell in, in California. Can I ask another question? So if, if we were to say it's silent and it should go to the district court, then you would lie in, I guess, the Eastern District of California, is that correct? And what would you base that? Yeah, I assumed, probably wrongly, that the reason the government was arguing for a district court was they were assuming it would be in a district court in Washington, D.C. But if it's silent as to which court, I didn't research the issue, is it silent as to venue? Your Honor, I don't recall those exact provisions, but I do know that having checked them, it was clear to me that we would be in the Eastern District of, of California. Okay. And I, and I might point out, Your Honor, that we, we do recognize that the, that the district courts have jurisdiction in certain appliance-related cases under, under APCA. The Energy Commission joined a number of other States suing DOE in its failure to carry out its non-discretionary duty to adopt efficiency standards on a statutorily prescribed schedule. That case, we, we brought that case, along with the lead plaintiff, the, the State of New York, in the district court in New York. Similarly, several years ago, intervener AHAM and several other trade organizations sued the Energy Commission. They were arguing that we were preempted, interrupted from doing various things. They went to the district court. We did not argue that the court of appeal had, court of appeals had, had jurisdiction. That was not the kind of case, a rule-making case in the federal agency below, where there's a fully developed record, that, that should have gone to the, to the, to a court of appeals. If we're through with that, I, my understanding is that the essence of what the DOE did here was to say, we are not going to grant this waiver because there's just not enough here for us to even evaluate. I think that's what they said. Well, they, is it, that's, that's one of the things they said. They said, they said three different things, and each, and in each one, they made an error, a clear error of law that we believe that this Court can correct, can correct and give specific instructions to DOE on how to handle that matter on, on remand. And I'll go over those very, very briefly. The first error that DOE made is it said it could not grant a waiver because of the so-called three-year rule. DOE acted in late December of 2006. California had, has 6.0 water factor standards scheduled to go into effect on January 1st, 2010. The fact that Federal law requires a three-year delay between DOE's granting of a waiver and the going into effect of a State standard obviously was not a bar to DOE's granting a waiver three years and eight days before the California standard was, the two California standards at 6.0 were scheduled to go into effect. I can understand, though, if they view your program as a sort of a step program and we're going to tighten it here for three years and then we're going to build on that for the next three, that they might not feel free to deny the waiver in the first step and then say, OK, you can go ahead with the second step. Well, you know, we can, I could speculate for a long time about what DOE might have thought, but we don't know because they did not say that.  QUESTIONER If I could just ask, in your hearings, did any manufacturer come forward to say that, you know, your proposed standards would be difficult or impossible to meet? MR. WESTMORELAND Yes, Your Honor. There was also other evidence in our rulemaking record that the standards would, in fact, be quite feasible to meet. And, of course, as we pointed out in our rebuttal brief, our prediction has come through. There are 6.0 top-loading vertical axis. QUESTIONER Are those only horizontal axis machines? MR. WESTMORELAND No. No, Your Honor. What we cited in our rebuttal brief referred to two models that meet the 6.0 standard that are top-loading vertical axis machines. And if I may, this, of course, is not in the papers before you, but our most recent check of the Energy Commission's database now shows that there are 10 such models available, top-loading vertical axis 6.0 or under. QUESTIONER Let me ask you, what is the remedy you want here?  WESTMORELAND Okay. Excuse me, Your Honor. We are asking this Court to enter an order that says that DOE's decision is unlawful and the causes remanded to DOE with instructions to publish a decision in the Federal Register within a reasonable time, say 30 days. Number one, DOE should reaffirm its finding under 6297d3 that no party showed by a preponderance of evidence that the California standards would significantly burden the manufactured marketing distribution, sales, or servicing of clothes washers on a national basis. DOE has already made that finding, and nobody has challenged it in this Court. Therefore, it must stand. What I'm doing is I'm going through the three major statutory criteria, industry burden, unavailability of consumer features, and unusual and compelling interests, sort of in the order. QUESTIONER So I guess what my question was getting at, you're not asking for a remand for it to go back to the DOE for reconsideration or additional evidence. You just would like us to order it to grant a waiver because it's the three bases for its prior decision are legal error. That's basically your position? Yes, Your Honor. I recognize that I am facing an uphill battle on a remand with directions to find that the California standards are, quote, unquote, needed to meet the unusual and compelling interests, because that is a matter on which DOE did not make a finding at all. The agency found that it did not have to reach that issue because it found that California did not show that it had unusual and compelling interests. And having found that we did not have those interests, the agency did not need to address whether the standards were needed to meet those interests. We've argued that the evidence is overwhelming on the issue of need, that the hundreds of water districts in the state, the association representing investor-owned districts, the association representing the publicly-owned districts, the largest two water districts in the state, NWD and Los Angeles Department of Water and Power, even the largest energy utility in the state, all argued that, all pointed out that California population is increasing. Our supplies are actually dwindling. The courts have limited, have reduced the amount of water we can get from the Klamath and from the Delta. Our contractual allocation from the Colorado River is being cut back. Global warming appears that it will increase the need for water in the state, while at the same time, by reducing the amount of Sierra snowpack, it's actually going to result in less water being available. These utilities that provide us with our water and our energy also pointed out that they're doing everything they can. They're, on the supply side, they're pumping more groundwater, they're engaging in water transfers, they're recycling. On the conservation side, they're helping farmers make their pumps more efficient, they're adopting landscape ordinances, they're giving rebates for efficient shower heads and toilets, they've got education programs. I was pleased to see two reminders in my hotel room to reuse the towels and reuse the sheets, and yet this is not enough. Everybody said that we need all the tools available to us to meet California's water crisis. So we do think that the evidence is overwhelming that the standards are needed. However, I admit that I have, as I said, I have a higher hurdle to get over here to have you make a directive that they make that finding. I think it would be easier to say that they have to do it and resolve this issue in 90 days or something. Well, I certainly think that a timetable is critical. I mean, DOE extended... I mean, you have the raw fact that there's going to be different personnel in this agency. After January 20th. I mean, I don't know if you want to say that you have to have it before January 30th. You know, the guy in charge has been there through several administrations, the guy in charge of the appliance program. You know, I can't speculate about what DOE might do this year. I'm going to say just, I don't know how quickly. What I'm wary about is putting myself at the core, making a determination that really is better left to the agency. Yes, and that's why I try to stress here and also in our briefs that every... I haven't been able to get to all of them here, but every DOE decision is actually an error of law. All right. And I've gone over my complete time. Thank you. We'll give you some rebuttal if it's necessary. May it please the Court. I'm Thomas Byron from the Department of Justice here on behalf of the respondents, the Department of Energy and the Secretary of Energy. Intervenors Council has asked for five minutes of respondents' time, and we've agreed to that. So I'll limit my remarks to the Court to about 15 minutes or less, depending on the Court's questions, of course. Since much of opposing counsel's time addressed the jurisdictional question, I'll begin with that. And first I'll emphasize that a waiver determination concerning federal preemption of state standards is not tantamount to an amendment of federal energy standards promulgated by DOE. The reason is that Congress made a legislative judgment to impose preemption, and that exists whether or not DOE has put in place its own regulatory energy efficiency standards. Thus, the source of the preemption is not the DOE energy efficiency standards, but the statute itself. And what is it? It preempts all, what, residential washers? I mean, what does it say? The preemption provision, Judge Canby, says that no state can promulgate energy efficiency or energy usage or water usage standards concerning any appliance as to which there is a federal energy efficiency or water efficiency standard. Okay. Well, in a sense, then, it may not be DOE's preemption, but it's triggered by a DOE action. Not necessarily, Judge Canby. And the reason is that the statute itself, in the statute itself, in APCA, as amended, Congress actually set the first energy efficiency standards for washers as well as for dishwashers, air conditioners, many other appliances. And the preemption provision actually took effect on the basis of those legislative standards. So Congress set the energy efficiency standards for washers, residential washers? Yes. And that's my point, that during the period before 2001 when the regulatory standard was adopted by DOE, there was in place a statutory standard which triggered the preemption provision. And that's why Petitioner's argument here doesn't hold water. That's an interesting metaphor. Sorry, Your Honor. Apologies for the pun. It was unintentional. A pleasant counsel also made the point that if now this Court were to transfer the case to district court, there would be undue delays. That, indeed, is regrettable, but it's due solely to the litigation choice of Petitioner itself. But Congress didn't specify the district court, either. That's correct, Judge Wardlaw. So why, on what basis is the government arguing for district court? As we pointed out, and as this Court and others have repeatedly held, the default rule is that general federal question jurisdiction and the APA's standards offer a basis for review of agency action in district court when there's no other specific jurisdictional provision. And we think that applies here. And the general venue provision, I believe, it's been a while since I looked at it, but And that would authorize suit, I believe, in the Eastern District of California for Sacramento. We do not dispute that review is available under the APA in district court. And therefore, there is no question that a decision by this Court to transfer the case to district court would in any way preclude the remedies that the district court has. What district court did you transfer it to? I believe they've asked for the Eastern District of California or indicated that that would be appropriate. We believe suit could be brought there or in the Washington, D.C., in the District of D.C. Now, is there any fact-finding that would be required by the district court? No, Your Honor. Is there any fact-finding that would be allowed by the district court? No, Your Honor. And the reason you're absolutely right to suggest, as we also acknowledge, the standard is exactly the same in this court under a petition for review or in district court under APA standards. So why would we have the district court apply the standard and then the Court of Appeals apply the standard? And how would we review that? They would – the district court would be determining whether the agency was arbitrary and capricious. Yes. And then we come up here and we decide whether or not the district court – Indeed. What? Errata's now of law? De novo review. Yes, Your Honor. De novo review? Yes. The same standard would be applied. So we just do it all over again. It is – it is – I agree it seems to no purpose, and yet that is the well-established standard concerning the limited jurisdiction of the courts of appeals. The same argument, of course, can be made concerning any APA claim. And yet the default rule is that a plaintiff seeking to challenge agency action does so in district court under the APA. As I say, we don't – we don't necessarily think it's a good rule or the – or that there's any particular reason for it, but it is the jurisdictional limitation of this court, and we thought it appropriate to raise the point for that reason. Okay. So this is really a simplistic view of this issue, but I'm going to ask it anyway. Okay. And maybe Judge Canby already asked it, but 6295 is substantive, correct? It provides the substantive standards for the efficiency of energy and water usage by these types of appliances, right? Yes, Judge Wortolau. It gives DOE the authority to set those standards. Okay. So it's sort of the substantive rule. And then 6297 is the preemption slash waiver rule. Right. So why isn't an adverse decision under 6297 making California an adversely affected party under 6295? Because it wants to enact stricter standards, and by refusing the waiver, you're forcing it to go to more – to remain with more lenient standards. Why isn't it adversely affected when it sees its interests so differently? The basic reason, Judge Wortolau, as I tried to explain before, is that the preemption isn't triggered solely by DOE's standard issued under 6295. It instead was triggered in the first instance here by Congress's judgment to set the initial standards. I didn't follow that. I didn't follow that argument, because preemption or waiver, to me, is more procedural. You have the rule, the substantive rule. Yes. And absent anything else going on, Congress has said that California is bound to that. But it said we'll give you an out. You can apply to DOE for this waiver. Right. But if the DOE declines the waiver, you're back to these other – the substantive rules. No, Your Honor. And I'm sorry. It's true that 6295 does apply, but it's not an order under 6295 that applied before the year 2001 when DOE set Federal amended standards, because before that time, the Federal standard under 6295 was set by Congress itself. And therefore, any harm to Petitioner from preemption flows from 6297, not from an order under 6295, which is what 6306 says, is the basis for review in this Court. I'm sorry. That is a little confusing. I'll try again a different way if you think it might be clearer. Are we – is DOE still under the original congressional – No. No, Judge Canby. In 2001, DOE did set, in its amendment proceedings, it set new standards for energy efficiency of washers, residential clothes washers. So as of that time, we're now operating under a DOE-issued administrative standard. And a waiver would change that requirement for California? Actually, it wouldn't, because remember, the DOE – Because files on California is on top of it, I suppose. Well, actually, no. Let me make clear one other distinction here that we think is important. DOE set an energy efficiency standard for clothes washers. California wishes preemption not to set a different energy efficiency standard, but instead to set a water standard, a water usage standard. It's quite different. The two, in fact, are related somewhat, but not directly correlated, as both Petitioner and DOE acknowledge. And so they're really quite separate. Now, Congress just last year, the end of last year, adopted a statute that for the first time, and that will take effect, I believe, in 2011, if I remember correctly. So right now, there is no federal water usage standard for residential clothes washers. Why does California have to come to you to get a waiver? Because the statute says whenever there is an energy efficiency standard, preemption covers both energy efficiency, energy usage, and water usage standards by the states.  GOTTLIEB Why does your distinction make any difference, if it's automatically covered anyway? MR. GOLDSTEIN I merely sought to correct what I thought was an impression, that the State water standard would displace a Federal standard, and it would not at this time.   There's no Federal water standard. MR. GOLDSTEIN  MR. RUBENSTEIN The State, in 2011 anyway, the State would have the only water standard. MR. GOLDSTEIN That's correct, Your Honor. Let me turn briefly to the question of relief and the general rule, of course, in agency review cases, whether under APA or petition for review, is that if a court for some reason disagrees with the agency's articulated explanation or with the record's support for it, that a remand is appropriate to give the agency another chance, because the agency is the only appropriate first decider of these questions on an appropriate record. That's true here, and none of the very rare cases that this Court or others have found were in divergence, but would apply here. Notably, if there were a need for a remand, or indeed if CEC were to file a new petition for a waiver, DOE would need to reopen the administrative record or open a new administrative record, because the facts today are really quite different than they were a couple of years ago. To begin with, for one thing, Petitioner points to information outside the administrative record concerning newly available washer models that were not available at the time and were not predicted at the time. MS. GOLDSTEIN Is there any? I mean, we go on the website of government bodies all the time, so I mean, I was thinking after this argument I might look at the Internet for the commission to see if that's true or not. MR. GOLDSTEIN But the key here is that review of an agency decision is limited to the administrative record before the agency at the time. Later developed information is not part of the administrative record.    That's a good point. MR. GOLDSTEIN That's all I'm saying, that in order to take account of the information they're now raising, we'd have to reopen the administrative record. And indeed, in order to take account of the change that will be coming in light of the new Federal statute setting water standards, which is going to change what's going to happen, likewise the administrative record would have to be opened anew.  GOLDSTEIN And those are effective 2011? MR. GOLDSTEIN I believe so, Your Honor. I believe Mr. Samuels could address that in greater length if the Court's interested. If the Court has any questions about the rationale that DOE articulated for denying the waiver here, I'd be happy to address them. I'd like to emphasize as a general matter that all three of the specific rationales go to the basic point that California said the costs and benefits of its proposed water usage standard supported it. But they didn't tell us how they reached that conclusion. They didn't tell us... GENERAL VERRILLI Do you accept their reference to their own administrative proceedings? MR. GOLDSTEIN Well, they said in their reply brief, and I believe it was footnote three, that those are not part of the administrative record before DOE. So they cannot be part of this Court's decision, nor were they before the agency at the time. GENERAL VERRILLI You asked for comments on them, I think. MR. GOLDSTEIN We pointed to them for commenters who were interested in getting more information. And indeed, we asked commenters specifically to address whether the cost-benefit analysis was correct and whether it was supported. That's in the notice that was sent seeking comment. GENERAL VERRILLI And that's therefore still not part of your record? MR.   It was not presented to the agency by the agency, nor by any other commenter. Indeed, specifically the PG&E study, the Davis study done for PG&E that CEC cites in its briefs in this Court, was not presented to the agency. It's not in the administrative record. GENERAL VERRILLI But comments about it went to the agency? MR. GOLDSTEIN  No one addressed it until the briefs in this case, with the exception, I believe, of a passing reference to it in the reconsideration petition before DOE after the final rule was issued here, after the order was issued here. And that really goes to the problem, that the underlying assumptions and inputs that gave rise to the cost-benefit conclusions that CEC relied on to support its GENERAL VERRILLI Do you have any idea how long the State administrative record is? MR. GOLDSTEIN I don't, Your Honor. That's not, again, that's not part of our administrative record. GENERAL VERRILLI I know it's outside the record, but I don't know. GENERAL VERRILLI Why did it take you a year if that wasn't part of the record? MR. GOLDSTEIN Well, for one thing, Judge Trager, DOE was engaged in many, many ongoing standard-setting efforts. Indeed, in the Southern District of New York, there was a consent decree entered setting deadlines in 2006, setting deadlines for the agency to deal with its backlog. Now, also bear in mind that the time for comments closed less than or just barely a month before that six-month period ended. So there was very little time to review the comments at that point. So just to review the comments that were received, the agency needed that additional time. The need to identify those kinds of assumptions and inputs is something very fundamental to agency decision-making. It's not new. It's not new to CEC. They were certainly aware of it as well. Indeed, in the D.C. Circuit case in Harrington, they, among others, raised that. KENNEDY So what you're saying is they should have written a letter saying we would like them on our prior administrative record to be part of your record? MR. CHAUNCEY  They should have written a letter saying we would like them on our prior administrative record, including the PG&E study, for example, that if they thought it was relevant to the determination DOE was called upon to make, and yet they didn't. They offered only conclusory statements that do not suffice. If the Court has no further questions, I'd like to leave a few minutes for Intervenors Counsel to address the Court as well. Thank you. We urge the Court to deny or dismiss the petition. CHARLES SAMUELS May it please the Court, my name is Charles Samuels. I'm Counselor to the Association of Home Appliance Manufacturers, which represents virtually every manufacturer or seller of clothes washers in the United States, whether they be high efficiency or not. And we fully support the government's brief and decision in this case. I just want to make a few supplementary comments. What this case is really about is whether it was reasonable for the Department of Energy to decide that California had failed to review the alternatives and the effects of the federal government allowing it to deprive every Californian of top mount, top load, conventional, moderately priced clothes washers. That decision was right at the time. And if California tomorrow, as is its right, filed another petition with California, with the Department of Energy, that decision would still be right. Because the fact of the matter is, despite what the agency counsel says, there are, there were and are no conventional top load clothes washers that meet the heightened California standard. What we have are products that are $1,000 or more, not the $300, $400 clothes washer, which is the basic United States and California clothes washer. And what this really shows in a broader form is why federal preemption is so important, because the federal government takes into account the national interests, which do include water and energy efficiency, but also include the impact on manufacturers and consumers, the utility of the product, the employment in the United States. It's only under the most heightened of circumstances that the law allows a state like California to get an exemption from preemption. As a matter of fact, although California supported this federal law, it attempted to change the preemption standards so it would be a simple cost-benefit analysis, not very complicated. It failed, as we pointed out in our brief. It failed, and instead we have a rather elaborate multi-part test, and that is the test that California failed to meet. Now, the other point, the second point I want to make, which I think is very important, is it was quite reasonable for DOE to decide that this three-year lead-in period between the time of its decision and when the effective date of any California standard would be was critical, that the data that was provided was linked to that date, and that the fact that that was an impossibility was a ground for the petition to be denied, because the date, the stringency of the standards, the savings, the impacts, all have to be considered together, and even if in some general sense it's proper for a federal agency to reformulate a failed rulemaking petition and make some new rule out of it, in this case it was impossible based on that record. I mean, the record is stale now, but it was even stale at the time because of the several years that it took the commission after the state legislature acted in order to promulgate this rulemaking. So you cannot ignore the importance. It's not a technicality. It's a substantive importance that you look at what the standard would look like three years hence, not five years, not seven years, not one year, but three years, because it is a dynamic situation. The world changes. And so it was very reasonable for DOE to... What do you do with the problem of not knowing when the agency is going to act, and how do you set the three years from the effective date if you don't file... That's a very good question, and we face that all the time in our relations with the Department of Energy as well. The fact of the matter is, CEC did not need to gridlock itself into those specific dates and those analyses that are contingent on those dates going into effect. It could have made a reasonable estimate of what a standard would be like in the future and said it in enough years in advance that there would have been absolutely no problem having a three-year lead-in period. California could have done it but decided not to do it. It decided it didn't matter what the federal standard said, and that was a mistake. That was a structural mistake. I'm sure if they file a new petition, they will organize the petitions and their state rulemaking so that there will be a proper three-year lead-in period. The other thing I want to say is that what California calls the do-nothing scenario, which is not allowing a California standard but allowing federal energy standards, we're on our fifth federal energy standard, federal water standards, which will go into effect in 2012. And they're much, much more lenient than California's. They are, and they are less stringent for the very reason the federal government has determined that there is a balancing of interests. It isn't just saving water. It isn't just saving energy. It's also what the impact is on consumers of being able to pay $300 or $400 for a clothes washer, Your Honor, versus $1,000. And it's the impact nationally on the marketplace and on manufacturers. It's very reasonable. And by the way, these federal water standards were supported by an alliance of not just manufacturers but advocates, many of the amici in this court, and the California Energy Commission. It doesn't mean that this case is moot, because it's not. But it does mean that California is not bereft of protection here. California is not left without the ability to conserve water and energy. There are very aggressive state programs in place, very aggressive federal programs in place that is moving the marketplace. Federal water standards are not only going into effect in 2012, sir, but new ones will go into effect in 2015. And I'm sure that California will be a major part of this. So it needs to be understood that the present scenario is not one where California is stripped free of being able to protect its citizens. I think my time has gone past, and I appreciate the court. Yeah, I gave you a couple minutes. Oh, okay. Thank you very much. No, wait, I gave it to you. Oh, you gave me a couple minutes. I'll give California a couple minutes to abate it. Thank you, Your Honor. We appreciate the courtesy. Very briefly, one, the default rule is not that jurisdiction is in the district courts. That so-called default rule applies when Congress has provided no avenue for judicial review. The default rule, according to Florida Power & Light v. Lorien, when there is an agency rulemaking under review, the default rule is jurisdiction is in the courts of appeals. Second, I believe it was Judge Wardlaw who asked why California's water standards are preempted by DOE's energy standard. I just wanted to give you the citation. That's 42 U.S.C. 6295C. Third, on the necessity to reopen the record, certainly that would not need to be done to have the record reflect the truth that there are, in fact, a number of 6.0 top-loading vertical-axis reasonably-priced models available. DOE can certainly take judicial notice of that fact. It can go to the U.S. EPA's ENERGY STAR website. Having not looked at the website, he says it's $1,000 and a normal one is $4,500. The ones that you're referring to are, you know, maybe Bosch or something. The latest information from our technical staff is that the 10 models on that are currently meeting the 6.0 standard range from 800 to 1,000, with a standard discount of $100 if you buy a white one and a standard retailer discount of another 10 percent. That gets you down to about $800. Our estimate in 2007 dollars was $680. You inflate that to 2009 dollars. The estimates are really quite close, and the standards are very cost-effective. Even Sears said, and this is in DOE's record, that a highly water-efficient machine will pay for itself in eight to ten years. A washing machine lifetime is 14 years. The record before DOE shows that our standards will pay for themselves in only six years. Speaking of the record, the DOE made the point that the PG&E analysis was not before it. I'm looking at the petition. There's citations to it. Was it before it or not before it? The PG&E study is not part of the DOE rulemaking record. There are several citations to it, as you just noticed, and there are several comments in the record that say the PG&E study says A, B, C, and therefore we say X. Well, you're here saying that the best of all was you would get a remand with instructions to grant a waiver. But is there enough if your own proceedings aren't in the record? Is there enough in the record for us possibly to do something like that? Yes. Yes, Your Honor. The let's let's remember that when we originally filed our petition, DOE has 15 days to review a petition under its own regulations to determine whether it has, and I'm quoting pretty closely, sufficient information for the purposes of a substantive decision. Right. Okay. They then took 63 days and decided that our petition was not sufficient because we had left out one single matter, which was a statement whether another California agency was considering the same matter. So we wrote them back and we said no. And then 18 days after we wrote them back, they said, okay, now it's complete. In other words, now it has enough information to make a substantive decision. Six months later, when DOE decided that it needed more time, you know, Congress requires them to put a notice in the Federal Register giving them the extra six months. What they said was that they needed more time to evaluate the petition and to investigate the petition and the comments that had been made. They certainly could have asked us then to provide any information that they thought was missing. They could have asked us in February when they originally noticed the petition and asked for comments. Obviously, they could have asked us when they said that our petition was complete. And I don't know whether the burden is yours to make a record sufficient to get a waiver. Your Honor, the burden is ours and we carried it. Our petition is almost 50 single-spaced pages long. The assumptions and a description of the analysis is in the petition. We also showed in the petition that our estimate of first costs, which is really the only data point that DOE has ever complained about, was quite consistent with the DOE estimate. We then showed in our rebuttal comments, which, of course, are in DOE's record, that our estimate of first costs was quite consistent with Sears's comment and was very consistent with AHAM's own estimate of the amount that the manufacturing industry as a whole would have to spend in order to meet our standards. Basically, we took that estimate and we spread it over the number of units that the industry thinks is going to be made, and we arrived at, you know, what their estimate is of the increase in first costs. It was really quite low and certainly consistent with the others. Yes, Your Honor. I mean, I don't deal much with the district court judge with a review of administrative records, but you concede it wasn't part of the record, yet you made reference to it in your petition. What makes something part of a record or not part of a record? I mean, I don't quite understand. Well, I would say, Your Honor, that if we had said, if we had either provided the document to DOE as part of our filing or comments, or if we had said that we were incorporating it by reference, then it would have been part of the record. We did not do that. We did not think it was necessary. By the way, the — You cited it. Pardon me? But you cited it in your petition, right? Yes, because we thought that people who were very interested in going underneath the record might be interested. We did not want to submit the California record because it's 800-and-some-odd pages long, 599 pages exactly if you eliminate duplicate documents. You know, I mean, frankly, we didn't want to waste trees. It's less than a tree. You know, we just didn't think it was necessary. Had DOE asked for it, you know, we would have provided it. Thank you very much. And CAC versus DOE will be submitted. And this court will be adjourned for this session. Thank you. Thank you very much.
judges: Canby, Wardlaw, Trager